1  POMERANTZ LLP
2  Jennifer Pafiti (SBN 282790)
   1100 Glendon Avenue, 15th Floor
3  Los Angeles, California 90024
4  Telephone: (310) 405-7190
   Facsimile: (917) 463-1044
5  jpafiti@pomlaw.com
6
7  *Attorney for Plaintiff*
8  *[Additional Counsel on Signature Page]*
9
                    UNITED STATES DISTRICT COURT
10                  CENTRAL DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| CRISTIAN JESÚS MERINO MADRID, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AGEAGLE AERIAL SYSTEMS, INC., J. MICHAEL DROZD, NICOLE FERNANDEZ-MCGOVERN, BRET CHILCOTT and BARRETT MOONEY,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cristian Jesús Merino Madrid ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as

to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding AgEagle Aerial Systems, Inc. ("AgEagle" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded AgEagle securities between September 3, 2019 and February 18, 2021, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased AgEagle securities during the Class Period and was economically damaged thereby.

7. Defendant AgEagle purports to be a commercial drone company. According to AgEagle's website, the Company is engaged in the design, engineering, and manufacturing of commercial drones, as well as in providing drone services and solutions to the agriculture industry. AgEagle is incorporated in Nevada with its principal office located in Wichita, Kansas. AgEagle's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "UAVS."

8. Defendant J. Michael Drozd ("Drozd") has served as the Company's Chief Executive Officer ("CEO") since May 2020.

9. Defendant Nicole Fernandez-McGovern ("Fernandez-McGovern") has served as the Company's Chief Financial Officer ("CFO") throughout the Class Period.

10. Defendant Bret Chilcott ("Chilcott") is the founder of the Company, and served as the Company's President and Executive Chairman of the Board of Directors ("Board") until May 2020.

11. Defendant Barrett Mooney ("Mooney") served as the Company's CEO from the beginning of the Class Period until May 2020.

12. Defendants Drozd, Fernandez-McGovern, Chilcott and Mooney are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

    (d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

4

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

14. AgEagle is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to AgEagle under *respondeat superior* and agency principles.

16. Defendants AgEagle and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

17. On September 3, 2019, AgEagle issued a press release entitled: "AgEagle Enters the Fast-Growing Commercial Drone Package Delivery Market." The subtitle read: "Initial Purchase Orders Received and Testing Underway."

18. Quoting then-CEO Mooney, the press release stated, in pertinent part:

"Over the past year, there has been a surge of prominent companies, including Alphabet (Google), FedEx, Intel, Qualcomm, Amazon, Target,

Walmart, Alibaba, UPS, 7-Eleven, Uber and many others, actively developing commercial drone-delivery service initiatives as part of their long-term strategic plans. These companies intend to leverage the latest in unmanned aerial vehicle (UAV) technologies to deliver food, consumer products, medicines and other types of lightweight freight direct to consumers and businesses in the fastest, most cost efficient and environmentally responsible manner possible – a practical alternative to costly auto transport."

*"We have received our first purchase orders to manufacture and assemble UAVs designed to meet the critical specifications for drones that are meant to carry goods in urban and suburban areas. We look forward to providing greater detail in the near future on AgEagle's plans to address the needs of this highly specialized new market and the specific role we expect to play in its ongoing development[.]"*

(Emphasis added.)

19. On April 13, 2020, AgEagle filed its annual report on Form 10-K with the SEC for the fiscal year ending on December 31, 2019 (the "2019 10-K"). The 2019 10-K was signed by Defendants Mooney, Fernandez-McGovern and Chilcott. Attached to the 2019 10-K were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Mooney and Fernandez-McGovern attesting to the accuracy of the financial statements and the disclosure of all fraud. The 2019 10-K expanded on the September 3, 2019 press release by specifying that the first purchase order was from "a major unnamed ecommerce company," stating in relevant part:

*In September 2019, the Company announced that it was actively pursuing expansion opportunities within the Drone Logistics and Transportation market, and reported that it had received its first purchase order from a major unnamed ecommerce company to manufacture and assemble UAVs designed to meet the critical specifications for drones that are meant to carry goods in urban and suburban areas.* AgEagle is currently working in

close collaboration with this new customer on its tethered test flight operations and ongoing development. In association with the initial purchase order, AgEagle recorded its first revenues in the second half of 2019 and will recognize additional revenues from the project in the first quarter of 2020.

(Emphasis added.)

20. On April 15, 2020, AgEagle issued a press release entitled: "AgEagle Receives Follow-On Purchase Orders to Manufacture Commercial Drones for Package Delivery." The Company's press release announced follow-on purchase orders for its drones, stating in part:

> ***"the expansion of scope for its contracted commercial drone work through the receipt of follow-on purchase orders from a major ecommerce company.*** Representing significant new revenue, the new purchase orders relate to the continued manufacturing and assembly of drones used for the testing and refining of the client's commercial drone small package delivery vehicles, systems and operations currently in development."

(Emphasis added.)

21. On April 29, 2020, news broke of a video posted on the personal website and YouTube channel of Defendant Chilcott's daughter. The video showed how to safely unbox the drones, and included the logos of AgEagle and Amazon side-by-side. Although the video was removed, various copies and screenshots remain scattered across the Internet.

22. News of this video led to widespread speculation that AgEagle's "major unnamed ecommerce" partner was in fact Amazon, causing AgEagle stock to skyrocket

7

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

from an opening price of $0.95 on April 29, 2020 to as high as $5.15 in intraday trading on April 30, 2020.

23. The mysterious video was not the only signal to investors that AgEagle had partnered with Amazon to manufacture and assemble drones for the delivery of consumer goods. On July 7, 2020, Defendant Drozd, the Company's new CEO, released a letter to shareholders announcing the Company's expansion to a facility in Wichita, Kansas. The letter stated in pertinent part: "With a goal of materially increasing our manufacturing capacity and proficiencies, AgEagle has finalized its decision to expand our drone-related operations to Wichita, Kansas."

24. On August 4, 2020, AgEagle issued a news release announcing the details of its new Wichita facility, a 12,000 square foot office and warehouse space located at 8863 E. 34th Street North.

25. The rumor of a partnership between AgEagle and Amazon continued to grow, with many pointing out the proximity between AgEagle's new facility and Amazon's new distribution center. An August 4, 2020 article in the *Wichita Business Journal*, for example, wrote that: "AgEagle's new address is just down Webb Road from Amazon's future distribution center at 4044 N. Toben. There's been speculation of a partnership between the two companies given AgEagle's exploration into drone package delivery."

26. An August 18, 2020 article from the same newspaper entitled "AgEagle plans to begin move to Wichita next month" further reported: "The company has been touting a 'major e-commerce company' since last year as a significant source of future growth. It has been suspected that the client could be Amazon and its pursuit of drone package delivery."

27. In a September 9, 2020 investor presentation filed with the SEC, AgEagle continued to exploit the Amazon rumor for its own gain, claiming on the introductory slide that "U.S.-based AgEagle will be a leading commercial drone technology, services and solutions provider worldwide," and on the very next slide writing that "Amazon has taught the world to be impatient; people want things faster and cheaper."

28. After feeding the rumor of a potential partnership with Amazon for months – including but not only in the video that floated on the website with ties to Defendant Chilcott – AgEagle attempted to hide behind a contractual non-disclosure agreement in resisting calls to identify the ecommerce company with which it had partnered.

29. In the second quarter earnings call that took place in August of 2020, and again in statements made to the press ahead of the third quarter earnings call in October of 2020, CEO Michael Drozd insisted that he could not identify the Company's e-commerce partner.

30. The statements contained in ¶¶ 17-29 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse

Case 2:21-cv-01991-CAS-E  Document 1  Filed 03/04/21  Page 9 of 20  Page ID #:9

9

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) AgEagle did not have a partnership with Amazon and in fact never had any relationship with Amazon; (2) rather than correct the public's understanding about a partnership with Amazon, Defendants were actively contributing to the rumor that AgEagle had a partnership with Amazon; and (3) as a result, Defendants' statements about AgEagle's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

31. On October 14, 2020, news broke that Amazon did not have a partnership agreement with AgEagle, and in fact never did. *The Wichita Business Journal* published a story with the headline: "Exclusive: Who's AgEagle's big customer? We now know who it's not." The article, which reported that AgEagle was not partnering with Amazon, stated in part:

> Since AgEagle Aerial Systems announced its move to Wichita, speculation has swirled that it could be coming as part of a partnership with Amazon.
>
> But the retail giant has put the rumor to rest, with a company spokesperson telling the WBJ there is no partnership and that Amazon, to date, has not worked with AgEagle in any capacity.
>
> An AgEagle (NYSE: UAVS) spokesperson had no comment following the Amazon statement to the WBJ.

> The drone company, which announced plans in July to relocate from Neodesha, has been touting a "major e-commerce customer" since last year as a growth driver but has said it can't identify that customer due a confidentiality clause in its contract.

32. On February 18, 2021, Bonitas Research published a report revealing that AgEagle "was a pump & dump scheme orchestrated by . . . AgEagle founder and former chairman Bret Chilcott and other UAVS insiders to defraud US investors." The Bonitas Research report continued:

> In April 2020 rumor of a partnership between Amazon.com, Inc. ("Amazon", Nasdaq: AMZN) & AgEagle was started by a promotional video uploaded to AgEagle's founder and former chairman Bret Chilcott's daughter's personal website and youtube account (the "Promo Video"). Since then, a 54 page due diligence document has circulated on Reddit which at various times referenced the Promo Video and suggested that the AgEagle's partnership with Amazon was real.
>
> We have found no evidence of any "major e-commerce customer" or any drone technology credited to AgEagle other than reference to the Promo Video leaked by AgEagle's founder and former Chairman Bret Chilcott's daughter.
>
> In 4Q'20 an Amazon spokesperson disclosed to reporter Daniel McCoy of the Witchita Business Journal that Amazon specifically does not have any dealings with AgEagle whatsoever.

33. On this news, shares of AgEagle, fell $5.13, or 36.4%, to close at $8.96 on February 18, 2021, damaging investors.

34. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

11
CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired AgEagle securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of AgEagle, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, AgEagle securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

37. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of AgEagle;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused AgEagle to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of AgEagle securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- AgEagle's shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, AgEagle filed periodic public reports;

- AgEagle regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- AgEagle's securities were liquid and traded with sufficient volume during the Class Period; and

- AgEagle was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

42. Based on the foregoing, the market for AgEagle securities promptly digested current information regarding AgEagle from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. This Count is asserted against Defendants based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading.

47. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

• employed devices, schemes and artifices to defraud;

• made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

• engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of AgEagle securities during the Class Period.

48. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of AgEagle were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of AgEagle, their control over, and/or receipt and/or modification of AgEagle's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning AgEagle, participated in the fraudulent scheme alleged herein.

49. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other AgEagle personnel to members of the investing public, including Plaintiff and the Class.

50. As a result of the foregoing, the market price of AgEagle securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of AgEagle securities during the Class Period in purchasing AgEagle securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

51. Had Plaintiff and the other members of the Class been aware that the market price of AgEagle securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased AgEagle securities at the artificially inflated prices that they did, or at all.

52. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

53. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of AgEagle securities during the Class Period.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. During the Class Period, the Individual Defendants participated in the operation and management of AgEagle, and conducted and participated, directly and indirectly, in the conduct of AgEagle's business affairs. Because of their senior positions, they knew the adverse non-public information about AgEagle's misstatement of revenue and profit and false financial statements.

56. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to AgEagle's financial condition and results of operations, and to correct promptly any public statements issued by AgEagle which had become materially false or misleading.

57. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which AgEagle disseminated in the marketplace during

the Class Period concerning AgEagle's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause AgEagle to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of AgEagle within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AgEagle securities.

58. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by AgEagle.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 4, 2021

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS